[No. 15333.   Department Two.—December 26, 1893.]

J. H. WILSON, RESPONDENT, v. D. SAMUELS ET AL., APPELLANTS.

COMPOSITION AGREEMENT—DEFINITION.—A composition agreement is one made upon a sufficient consideration between an insolvent or embarrassed debtor and his creditors, or a considerable portion of them, whereby the latter, for the sake of immediate or early payment, agree to accept a dividend less than the whole amount of their claims, to be distributed *pro rata* in discharge and satisfaction of the whole.

ID.—AGREEMENT BETWEEN BUILDING CONTRACTOR AND LIEN CLAIMANTS.—A written agreement between a building contractor and claimants of liens upon the building by which it was mutually agreed that if the owner of the building would pay the amount due upon the building, the laborers should be first paid in full, and the remainder should be distributed *pro rata* among the other lien claimants, whereupon they would assign their liens to the owner of the building, is not technically a composition agreement, but is nevertheless valid and operative and founded upon a sufficient consideration.

ID.—CONSIDERATION—FOREGOING RIGHT TO FORECLOSE LIENS—PAYMENT BY OWNER OF BUILDING.—The mutual agreement of the lienholders who signed such agreement to forego their right to foreclose their liens in consideration of being paid at a given time, and also the acceptance of the agreement by the owner of the building and payment by him under it, constitute a sufficient consideration for the agreement.

ID.—RATABLE DIVISION OF MONEY DUE CONTRACTOR—BLANK AMOUNT—CERTAINTY.—The fact that in the agreement between the contractor and the lien claimants the amount to be paid the lien claimants as their *pro rata* was left blank does not render the agreement fatally incomplete. The contract having provided that the money due from the owner of the building was to be divided ratably among the creditors of the contractor affords a criterion by which to ascertain the amount due and its disposition with sufficient certainty.

ID.—ACCORD AND SATISFACTION—TENDER—ESTOPPEL.—Such agreement does not constitute an accord between the parties which may be disregarded at any time before satisfaction, but is a valid agreement binding

upon all lien claimants who signed it; and a lien claimant who refused to accept a tender of the *pro rata* payment to which he was entitled under the agreement, after all other claimants had received their *pro rata,* is estopped from repudiating the agreement, and cannot take advantage of his own wrong to recover the entire sum originally due him from the contractor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Naphtaly, Freidenrich & Ackerman,* and *A. G. Eells,* for Appellants.

*George D. Collins,* for Respondent.

SEARLS, C.—This is an appeal from a judgment in favor of the plaintiff in an action to foreclose a mechanic's lien, and from an order denying defendant's motion for a new trial.

Defendant Samuels was the owner of a lot of land in San Francisco. He entered into a written contract with W. A. Van Dervort, the other defendant, by the terms of which the latter was to construct for him certain buildings upon said lot. The contract was duly filed with the recorder of the city and county.

Plaintiff Wilson furnished materials and labor to the contractor for and in the construction of the buildings, for which there was due him $1,200. For this amount he filed a mechanic's lien against the buildings at the proper time and in due form

There was due the contractor from Samuels, on account of the contract, $6,312.

Twelve other liens were filed for amounts aggregating $8,875.69, on account of materials furnished. Also liens for labor aggregating $310.50. There were therefore liens filed exclusive of the labor liens, and including that of plaintiff, amounting to $10,075.69. The contractor Van Dervort seems to have been insolvent.

Before the liens were filed the creditors met and

endeavored to adjust their claims so as to avoid the expense and necessity of filing liens, but failed in their efforts.

After the liens were filed the lienholders met again, learned the exact amount due from defendant Samuels on the contract, except that there was thought to be something due on account of extra work on the building, but the precise amount thereof, if anything, was not known. The amount of the several liens was also reported to the meeting.

Thereupon an agreement in writing was prepared and executed by all the lienholders, the plaintiff included, except Glosser and Gallagher, who refused to assent thereto.

The following is a copy of the agreement:

" We, the undersigned creditors of W. A. Van Dervort, for work done and materials furnished in the erection of a certain structure for D. Samuels, situated on Greenwich street near Buchanan street, hereby agree that if said D. Samuels will pay, on or before the first of July, 1891, the money still due on said building, to wit: $——, the same may be paid as follows, to wit: 1. All the claims for labor, amounting to $310.50, shall be paid in full. 2. The remainder, $——, shall be distributed among all the other lien claimants in the proportion which each of·said claims bears to the whole amount of such other lien claims filed against said building, said proportion being — per cent of each of said claims.

"And, in consideration of said payment being made, we and each of us will, on receipt of our said proportionate shares, respectively assign our said liens to said D. Samuels, with the agreement that we and each of us will furnish the testimony necessary to prove and establish the validity of our respective lien in any litigation growing out of the refusal of one or more of the lien claimants to accept his said proportion; and that if said respective liens are not so proved by us, we will respectively refund the moneys so paid for such invalid liens. And the said W. A. Van Dervort hereby agrees to the pay-

ment of said money as above provided for, and hereby waives his own liens for any and all moneys so paid.

    [SIGNED]                    "W. A. VAN DERVORT.

"San Francisco, June —, 1891."

| NAME OF CLAIMANT. | AMOUNT OF LIEN. | |
|---|---|---|
| C. E. Doty & Co | $1,545 | 65 |
| Keenan Withington | 30 | 40 |
| J. H. Wilson | 1,200 | 00 |
| L. E. Clawson & Co | 122 | 00 |
| E. Platz | 507 | 00 |
| A. I. Sanborn | 200 | 00 |
| Latson Hardware Company | 93 | 00 |
| C. D. McGown & Co | 244 | 93 |
| Fulda Bros | 79 | 79 |
| Huntington, Hopkins & Co. per W. F. S | 518 | 19 |

As before stated, the parties did not know the amount due on account of extra work, and hence the blanks in the agreement.

The clause in reference to proving amount due and validity of liens was inserted to meet the case in the event that some of the lienholders refused to accept the arrangement, and in order that such dissenters might not receive more than their *pro rata* share.

Defendant Samuels was made acquainted with the agreement, and thereupon through D. H. Bibb paid off all the lien claimants their *pro rata* share of the $6,312 due the contractor, except the plaintiff, who refused to accept less than the full amount due him. Glosser and Gallagher, who refused to sign the agreement, finally accepted their *pro rata* share with the others.

Before the first day of July, 1891, $720 was tendered to plaintiff and refused by him, and after this suit was brought said sum was paid into court for him. This was slightly in excess of the *pro rata* share due him. The several liens so paid off *pro rata* were, with the consent of Samuels, assigned to one Greenwald, who brought suit upon them, which action was pending at the date of the trial herein. W. A. Van Dervort, the contractor,

joined with Samuels as a defendant, made default, and Samuels alone is appellant here.

The position of respondent in support of the judgment is:

1. The agreement is not a composition agreement, and is not binding as such.

2. The agreement is fatally inchoate and incomplete by reason of the existence of the blanks therein relative to the *pro rata* the claimants were to receive.

3. The agreement, by its very terms, was to be obligatory only upon those who *accepted* the *pro rata*.

4. That at the very most the agreement was only an accord which could be disregarded at any time before satisfaction, and therefore the respondent was at liberty to enforce his claim for the full amount.

In briefly noticing these propositions, it may be said of the first that a composition is an agreement made upon a sufficient consideration, between an insolvent or embarrassed debtor and his creditors, or a considerable proportion of them, whereby the latter, for the sake of immediate or sooner payment, agree to accept a dividend less than the whole amount of their claims, to be distributed *pro rata*, in discharge and satisfaction of the whole.

Considered in the light of this definition, the agreement herein set out is not technically a composition agreement, for the reason that it is not one for the payment by the debtor of any sum or thing, and for the further reason that it does not purport and was not intended as a release of the debtor.

It does not follow, however, from these reasons, that the agreement was inoperative or void.

The defendant, Van Dervort, as a contractor, was indebted to his creditors on account of materials furnished and labor performed in a sum in excess of $10,000. To the extent of $6,312 they had or were entitled to liens upon the buildings constructed. To the extent of this last sum the property of defendant Samuels was liable; but as there was no personal liability against him, he

was not at liberty to pay without the consent of all the parties the amounts claimed upon these liens. Had he done so, it would have been a mere voluntary payment without authority on his part, and would at least have devolved upon him the burden of proving, as against the contractor and lien-holders, the validity of the demands and regularity of the liens. (*Covell* v. *Washburn*, 91 Cal. 560.) To collect these several amounts through the instrumentality of suits to foreclose the several liens would take much time and·involve large expense, all of which would come out of the fund in the hands of Samuels. The counsel fees, judging from that allowed to plaintiff herein, would have approximated $1,000.

The creditors and their debtor combined had the power to release Samuels from their claim upon his property, or to agree upon any mode or time of payment or amount to be paid they saw fit, subject to his approval, without suit. The law could only enforce the liens upon the property of Samuels by a foreclosure. All the parties in interest were at liberty to obtain the sum for which the property was liable by any other lawful method by which they could contract.

It is said that Samuels occupied the position of a garnishee toward the creditors by reason of his indebtedness to the contractor. Grant the position, and what follows? Can it be doubted that the creditor and debtor may release the garnishee if they see fit, or provide by agreement when, where and to whom he shall pay the debt covered by the process of garnishment? We think not.

It is true as claimed by respondent, that Samuels did not seek any compromise or composition of the claims for which his property was liable; so far as appears, he was at all times willing to pay all that he owed to the contractor in the mode provided by law. It was not for his benefit that the agreement was made, but for that of the creditors of the contractor. It was in part for the benefit of the plaintiff here, who signed the agreement with the contractor and all the creditors except a single

firm, which afterward accepted its terms.   All parties have abided by the contract except the plaintiff, who now seeks to be rewarded as a result of his violation of it.

There was sufficient consideration for the agreement. In such cases the contract of each creditor is a sufficient consideration for the contract of all the others.   When they mutually agreed to forego their right to pursue the usual method of enforcing their demands in consideration of being paid at a given time, the engagement of each was a sufficient consideration for the engagement of the others to do the same.   In this respect it is in principle not distinguishable from a composition agreement.   (*Pierson* v. *McCahill*, 21 Cal. 129.)   Again, the acceptance of the agreement by Samuels and payment by him was a sufficient consideration for the agreement.

It is claimed that the contract is incomplete by reason of the blanks left therein relative to the *pro rata* to be paid the lien claimants.

The agreement in substance that we, the undersigned, hereby agree that if Samuels will, on or before July 1, 1891, pay the money still due, etc., as follows: first, all the claims for labor, amounting to three hundred and ten dollars and fifty cents in full, the remainder among all the other lien claimants, in proportion which each bears to the whole amount of such other lien claims filed, etc., we will assign our claims to him, and will, if any one or more claimants shall refuse to accept his proportion, prove our claims valid or return the money paid to us.   Van Dervort agrees to the above, and to waive his right to liens for money so paid.

This is signed by the creditors, with the amount of their liens affixed.   The rule enunciated by Parsons in his work on Contracts (volume 2, page 693), in reference to blanks in agreements, is as follows:

" Thus if a blank be left in an instrument, or a word or phrase of importance omitted by mistake, the omission may be supplied if the instrument contains the means of supplying it with certainty."

In the present case the contract affords the means for supplying the blanks in the agreement.

It was the *money due from Samuels* that was to be divided, and it was to the demands due the creditors of Van Dervort that it was to be applied ratably. Those demands were all of record, and the proofs introduced without objection showed that the parties had a complete list of them at the meeting when the agreement was decided upon. The amount due from Samuels was also well known at the meeting, except that Van Dervort thought there was something in addition for extra work. The contract afforded a criterion by which to ascertain the amount due, and its disposition.

Had the agreement been simply to divide the sum due from Samuels to Van Dervort on account of, etc., among the lienholders on the property, without other or more accurate specification, it would have been ascertainable and valid.

A agrees to sell to B all the corn on ship C at a specified price per bushel. The quantity is not known, but is ascertainable.

"As to the *parties* or the *subject matter* of a contract extrinsic evidence may and must be received and used to make them certain, if necessary for that purpose." (2 Parsons on Contracts, 680.)

The essential thing, under the contract, to be done was to pay in full certain liens for labor, and then to distribute the residue of the money " amongst all the other lien claimants."

It was to be thus distributed, irrespective of the *pro rata* and irrespective of the validity of the liens. In other words the contracting parties assumed that all the lien claimants had valid liens, else why was Samuels authorized to distribute the balance of the fund " amongst all the other lien claimants"?

Respondent contends further that the agreement was to be obligatory only upon those who accepted the *pro rata*, and that, as to any of those signing and refusing

to accept, special provision was made. We do not so construe the contract.

Those who signed the agreement were bound by it; but it appeared that one or more refused to execute it, hence the necessity for providing a method by which they should be prevented from obtaining a larger share of the fund than those who became bound by the contract.

To suppose that the parties who signed the contract did so with the view that they were not to be bound by it if Samuels consented to pay them the money under it is to assume that they lack intelligence, or that they were seeking to practice a fraud upon Samuels, neither of which we are willing to assume.

The court below found that defendant Samuels had not paid any part of the sum in his hands except the amount paid on the labor liens, the payment of which was admitted.

This finding is in the face of the evidence, which is to the effect that Samuels accepted the agreement, and promised to pay it; that Bibb advanced the money on the agreement, and paid it out to the lienholders, and that Samuels repaid it to him.

There is no conflict in the evidence on this point, and the finding is in direct conflict with the evidence.

The evidence shows beyond controversy:

1. That plaintiff signed the agreement.

2. That prior to July 1, 1891, defendant, pursant to said agreement, paid the entire funds in his hands owing to the contractor, Van Dervort, except the sum of seven hundred and twenty dollars, which was the proportion of said fund to which plaintiff was entitled.

3. That said amount was tendered to plaintiff prior to July 1, 1891, and was deposited in the court below for plaintiff by the defendant, upon filing by him of his answer in this cause.

All these things did not amount to an accord between the parties, but did constitute a valid and binding agreement which authorized defendant to disburse the

fund in hand, as has been done as to all the other claimants, and to permit the plaintiff to repudiate such executed agreement as to all the other parties, and recover from defendant the entire sum due him from Van Dervort, would be to permit him to take advantage of his own wrong, and equivalent to offering a premium for wrongdoing.

The judgment and order appealed from should be reversed, and a new trial ordered

HAYNES, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed, and the cause remanded for a new trial.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.

Hearing in Bank denied.