[Civ. No. 4360.  Second Appellate District, Division One.—September 20, 1924.]

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES (a Corporation), Plaintiff, v. CORA M. JACOBSON, Executrix, etc., Defendant and Respondent; BRUNSWIG DRUG COMPANY (a Corporation), et al., Defendants and Appellants.

[1] CORPORATIONS—PROMISSORY NOTES—INDORSEMENTS BY PRINCIPAL STOCKHOLDER—LIABILITY OF CORPORATION—EVIDENCE.—The fact that a bank requested a party, who was the principal stockholder in a corporation, to personally indorse promissory notes executed by a debtor of the corporation in order to save annoyance and complications and "to make unnecessary a resolution by the board of directors in connection with the indorsements upon such notes" does not warrant the conclusion that the indorsements were accepted by the bank for and on behalf of the corporation; and conceding that said stockholder was the president of the corporation and owned nearly all of its capital stock, this was not sufficient to bind the corporation as indorser on notes so executed and indorsed.

---

1. Power of president and secretary to execute commercial paper for corporation, notes, 2 **Ann. Cas.** 520; 18 **Ann. Cas.** 729. See, also, 6 **Cal. Jur.** 1130, 1132; 7 **R. C. L.** 452.

[2] CONTRACTS—ASSIGNMENT OF PROPERTY FOR BENEFIT OF CREDITORS —CONSENT OF CREDITORS TO—CONSIDERATION.—A debtor's execution of a deed of assignment of his business and certain real property to an assignee for the purpose of paying such creditors as shall consent to the assignment and with the understanding that the creditors consenting to the assignment shall, by such consent, release said debtor from all claims and demands and be deemed to agree to accept in full payment of their claims *pro rata* payments to be made to them, together with the consent of two or more creditors, constitutes a contract based upon a sufficient consideration and is binding upon each of the parties.

[3] ID.—DISCHARGE OF CLAIMS — INDORSERS OF DEBTOR'S NOTES — CONSENT OF PAYEES TO ASSIGNMENT — EFFECT OF — PAYMENT.— Where the contract created by the execution of such deed of assignment and the consent of the creditors has been performed and the assigned property has been applied in good faith toward the payment of the specified indebtedness, the claims of the consenting creditors against the debtor are discharged, as is also the liability of an indorser of notes executed by such debtor in favor of a consenting creditor; and such debtor is not indebted to an indorser of his notes for payments made by the latter to the payees of said notes after said payees consented to the assignment agreement.

(1) 12 **C. J.**, p. 276, sec. 59.  (2) 12 **C. J.**, p. 256, sec. 13, p. 257, sec. 14, p. 271, sec. 45, p. 272, sec. 49.  (3) 12 **C. J.**, p. 276, sec. 59, p. 277, sec. 61.

APPEAL from a judgment of the Superior Court of Los Angeles County.  John W. Shenk, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Mott & Cross and G. C. O'Connell for Appellants.

Cates & Robinson and Dudley Robinson for Defendant and Respondent.

CONREY, P. J.—This is an action in interpleader.  Plaintiff paid into court the sum of fifteen thousand dollars due on an insurance policy on the life of William F. Jacobson, deceased, and thereupon by order of court was discharged from further liability under the policy.  This left the controversy for determination upon the adverse claims of the

2.  See 3 Cal. Jur. 328; 2 R. C. L. 676.
3.  See 3 Cal. Jur. 328; 2 R. C. L. 667.

interpleading parties, to wit, respondent Cora M. Jacobson, executrix, and appellant Brunswig Drug Company. Judgment was entered in favor of the executrix. The appeal is taken from that judgment.

In March, 1912, William F. Jacobson was engaged in the retail drug business in the city of Los Angeles and was indebted to the Brunswig Drug Company, a wholesale dealer in drug supplies. For the purpose of securing this creditor, Jacobson took out the said policy of life insurance payable to his executors, administrators or assigns as beneficiary. On March 27, 1912, Jacobson assigned the policy to Brunswig Drug Company. The assignment, however, was limited as follows: "Provided, however, and it is understood and agreed, that this assignment is to secure the repayment of the sum of fifteen thousand dollars or such amount as may be due to the said Brunswig Drug Co."

On the thirteenth day of June, 1913, Jacobson, being indebted to a large number of creditors, executed a deed of assignment, in which his wife joined him, to L. N. Brunswig. This instrument transferred the assets of Jacobson's said retail drug business and also certain described real property in the state of Utah. It was provided in said instrument that the assignee, out of the proceeds of said property, should pay to such of the creditors as should consent to the assignment and the terms thereof, *pro rata* according to the several indebtednesses due to them from said William F. Jacobson, "after deducting all moneys which said second party may at his option pay for a discharge of any lien on any of said property and any and all preferred indebtedness and all expenses incurred hereunder, including a reasonable compensation to be allowed said second party for his services rendered hereunder. . . . It is understood that the creditors of said William F. Jacobson consenting to this assignment and the terms hereof, shall, by such consent, release said William F. Jacobson from all claims and demands that they now have against said William F. Jacobson, and by said consent shall be deemed and held to agree to accept in full payment of their several indebtednesses said *pro rata* payments to be made to them by said second party hereunder. . . . " Mr. Brunswig, as trustee, executed the trust and paid to the several creditors eighteen and one-half per cent

of the full amount of their claims. The Brunswig Drug Company was one of the creditors who consented to the assignment and shared in said dividends paid by the assignee. Nevertheless, that corporation claims the proceeds of the insurance policy, and seeks to apply the same to the satisfaction of alleged items of indebtedness for which it is claimed that William F. Jacobson was liable to the Brunswig Drug Company at the time of his death. The death of Jacobson occurred on the fourth day of December, 1915.

The first cause of action is for a balance of two thousand eight hundred dollars on a note executed by Jacobson to the Farmers & Merchants National Bank, dated April 17, 1912, payable one day after date, indorsed and guaranteed by L. N. Brunswig. This balance was paid by the Brunswig Drug Company on the fourth day of March, 1914. The second and third causes of action are likewise based upon notes which existed on June 13, 1913 (one to the said bank and the other to one Ivins), and which had been indorsed and guaranteed by L. N. Brunswig, and which were paid by the Brunswig Drug Company after June 13, 1913. [1] Appellants contend that the indorsement of said notes by Mr. Brunswig was made by him for and on behalf of the Brunswig Drug Company; that it was liable on the notes by reason of said indorsements, although they were on their face indorsements made by Brunswig individually; and that therefore the company's payment of said notes was in satisfaction of its legal obligation incurred on behalf of Jacobson and was not a voluntary payment. Appellants contend that the evidence is insufficient to sustain the finding of the court that said indorsements, which had been placed on said notes by Mr. Brunswig before delivery thereof, were his individual indorsements and not for and on behalf of said Brunswig Company. Mr. Brunswig testified concerning his indorsement of the notes that the bank requested him to personally indorse them in order to save annoyance and complications and "to make unnecessary a resolution by the board of directors in connection with the indorsements upon such notes." The indorsement having thus been made by him, his conclusion that "it was accepted by the bank for and on behalf of the Brunswig Drug Company" was an erroneous conclusion drawn by him which was inconsistent with the actual trans-

action.   Conceding the fact that he was president of the company and owned nearly all of its capital stock, this was not sufficient to bind the company as indorser on a note executed and indorsed as shown by this evidence.   The payees of each of said notes consented to the assignment agreement made by the Jacobsons to Brunswig, and did thereby, as in said instrument stated, release their claims and demands against Jacobson.

[2]   The execution of such a deed of assignment, together with the consent of two or more creditors, constitutes a contract based upon a sufficient consideration and is binding upon each of the parties.   [3]   The contract thus made, having been performed and the assigned property having been applied in good faith toward the payment of the specified indebtedness, the claims of the consenting creditors against Jacobson were discharged.   This likewise released the indorser of his notes.   (5 R. C. L., p. 871.)   It follows, that even if the Brunswig Drug Company be regarded as the indorser, Jacobson was not, at the time of his death or at all, indebted to it on account of its payment of any of said three notes.   But we are further satisfied that it was not the indorser.

The claims of appellant Brunswig Drug Company which are set out in the fourth, fifth, six, and seventh counts of its cross-complaint are as follows: The fourth count relates to a note of Jacobson and wife to J. B. Akey, dated April 5, 1913, due one day after date, and indorsed by the Brunswig Drug Company before delivery thereof.   Akey consented to the assignment to Brunswig, in like manner as did the other creditors.   Afterward the Brunswig Drug Company paid to Akey the unpaid balance due on said note.   The fifth cause of action covers a note dated March 1, 1913, due one day after date, made by Jacobson and wife to Brunswig Drug Company.   The sixth and seventh counts cover items of indebtedness existing on June 13, 1913, owing from Jacobson to the Brunswig Drug Company.   On all of these causes of action, as well as on the first three, we are of the opinion that the indebtedness of Jacobson was canceled by reason of the execution of the deed of assignment, the consent of the creditors, and the transactions pursuant thereto whereby the proceeds of the assigned property were duly applied,

*pro rata,* to the payment of the several debts. (*Wilson* v. *Samuels,* 100 Cal. 514 [35 Pac. 148, 559].)

During the trial an additional cause of action was pleaded by the Brunswig Drug Company, based upon the amount of certain premiums paid by the company to the life insurance company. As the court gave judgment in favor of the Brunswig Drug Company on that cause of action, and there is no appeal therefrom, this item requires no further attention.

All of the indebtedness of Jacobson to appellants (other than that last above noted), having been paid under the composition agreement, no lien or other security therefor could continue to exist, as no reservation thereof was made. The assignee of the life insurance policy held the bare legal title, and after the death of Jacobson the executrix became entitled to the proceeds of that policy; except only that, following the judgment as rendered herein (the correctness of which in this respect is not challenged), appellant Brunswig Drug Company is entitled to the amount awarded to it.

The judgment is affirmed.

Houser, J., and Curtis, J., concurred.